UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESSICA TUMAN and DANIEL KURTZ,

                Plaintiffs,

-against-

VL GEM LLC, GEM MANAGEMENT PARTNERS LLC,
GEORGE NUKHO, and MICHAEL NUKHO,

                Defendants.

No. 15 Civ. 7801 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

    Plaintiffs Jessica Tuman and Daniel Kurtz are a married couple residing at an apartment complex operated by Defendants George and Michael Nukho through Defendants VL GEM LLC and GEM Management Partners LLC. Tuman allegedly suffers from post-traumatic stress syndrome ("PTSD") and sought to keep an emotional support dog at her apartment to alleviate the effects of that disorder. She brought this action alleging Defendants discriminated against her after she requested this "reasonable accommodation" for her disability, in violation of the Fair Housing Act, 42 U.S.C. §§ 3601—3631, amended by the Fair Housing Amendments Act of 1988, 102 Stat. 1619 ("FHA"), New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290—301, and Westchester County Fair Housing Law ("WCFHL") §§ 700.19—700.35.[1] Plaintiffs seek injunctive and declaratory relief, as well as compensatory and punitive damages.

---

[1] Plaintiffs reference the Westchester County Human Rights Law, but only the county's Fair Housing Law provides for a private right of action. *Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 364 (S.D.N.Y. 2016).



DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/27/2017

Defendants seek to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Tuman has failed to provide sufficient medical documentation of the necessity for the emotional support animal to treat her medical condition. Additionally, arguing the action is entirely frivolous, Defendants seek sanctions against Plaintiffs pursuant to 28 U.S.C. § 1927 and Rule 11 of the Federal Rules. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part, and the motion for sanctions is DENIED.

## BACKGROUND

I.   **Factual Allegations**[2]

Plaintiff Jessica Tuman and her spouse, Plaintiff Daniel Kurtz, reside at Defendants' multifamily property located in Yonkers, New York. (Compl. ¶¶ 1-5, ECF No. 1.) Tuman has lived at the property at issue since 2009. (*Id.* ¶ 4.) Prior to moving into Defendants' apartment building, Tuman was diagnosed with PTSD as a result of an attack she suffered in 2001 and has received mental health treatment "ever since." (*Id.* ¶¶ 20-21.) Her PTSD limits her brain function, causes severe anxiety, and limits her ability to socialize with others. (*Id.* ¶ 22.)

In 2015, Tuman learned of the potential mental health benefits associated with having an emotional support animal. (*Id.* ¶ 25.) Since many dogs reside with other residents at the apartment complex, Tuman decided she would simply verbally advise Defendants of her intention to adopt an emotional support dog, which she did in July 2015. (*Id.* ¶ 26.)[3] Plaintiffs do not provide a copy of the lease agreement for the unit, or explain what restrictions the lease places on keeping animals in a tenant's apartment aside from requiring the landlord's written

---

[2] The Court assumes the truth of the facts alleged in Plaintiff's complaint, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and considers only documents incorporated into the complaint by reference. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). All other extrinsic materials are not considered at this stage of the litigation. *Chambers*, 282 F.3d at 154.

[3] Plaintiff refers to her emotional support dog as a "service" animal. (*See, e.g.*, Compl. ¶ 26.)

consent.  (*See id.* ¶ 28.)  It appears that Tuman considered her actions to be a request for a reasonable accommodation for her disability.  (*Id.* ¶¶ 31-37.)  Defendants have no written or established policy regarding reasonable accommodations.  (*Id.* ¶ 24.)

Defendants responded to Tuman's request by requiring a letter from a physician stating that "the dog would provide her a disability related need."  (*Id.* ¶ 26.)  On July 28, 2015, Tuman provided a letter from Dr. Emilio Biagiotti, M.D., of Montefiore Family Medical Associates stating that Plaintiff "suffers from severe anxiety due to post traumatic stress syndrome" and that "[h]er anxiety will be greatly alleviated if she is able to have a companion dog."  (*Id.* ¶ 27; Defs. Aff. Ex. B.)  She also provided Defendants with information about the incident that led to her anxiety disorder.  (*Id.* ¶ 27.)

On September 2, 2015, Defendants served Plaintiffs with a 10-day notice to cure for harboring a dog without the landlord's written consent.  (*Id.* ¶¶ 28-29.)  On September 24, 2015, Plaintiffs were served with a 7-day notice of termination, terminating their lease effective September 30, 2015, for failure to cure the violation.  (*Id.* ¶ 30.)

## II.     Procedural History

On October 2, 2015, after the termination became effective, Plaintiffs commenced this action.  Defendants notified Plaintiffs on November 10, 2015, of their contention that the action was frivolous and that, if it was not withdrawn, they would seek Rule 11 sanctions.  (Defs. Aff. Ex. D.)  As part of that correspondence, Defendants included a notarized copy of a letter, signed by Dr. Biagiotti, purportedly obtained after they communicated with the doctor on August 19, 2015, which states he "cannot verify that she has a medical necessity for a companion dog."  (*Id.*; *see also* Defs. Aff. Ex. C.)

At the pre-motion conference for Defendants' motion to dismiss, the parties discussed the need for medical documentation to establish the necessity of the support animal. At that time, defense counsel represented that "if she [Plaintiff Tuman] gets a real letter . . . that demonstrates a medical necessity, then she can stay in the apartment with the dog[.]" (Transcript of December 17, 2015 Conference; *see* Defs. Aff. Ex. F.) By letter dated January 8, 2016, Defendants informed Plaintiffs' counsel that they would proceed with their motion to dismiss if they did not receive such a letter by January 11, 2016. (Defs. Aff. Ex. G.) When that deadline passed, Defendants served and filed the pending motion. (Defs. Mem. at 13.)

In opposition to Defendants' motion to dismiss, Plaintiffs' counsel attached a letter from a licensed clinical social worker (LCSW-R), Carol J. Blitstein, dated January 11, 2016, discussing Ms. Blitstein's prior treatment of Plaintiff Tuman's PTSD in 2002 and Tuman's request to "resume therapy" in "the fall of 2015." (Pls. Aff. Ex. 5.) In the letter, Blitstein indicates "[t]he dog has been a therapeutic tool for Ms. Tuman to recover from PTSD." (*Id.*) In reply, Defendants' renewed their request for sanctions. (Defs. Reply Mem. at 1-3.) Defendants' motions were fully submitted as of March 17, 2016. (ECF No. 25.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,

493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION

Defendants assert that Plaintiff Tuman has failed to allege both that she is disabled and that, if she is considered disabled, her emotional support dog is a necessary accommodation. (Defs. Mem. at 6-8.)[4] Defendants also seek an award of sanctions against Plaintiffs and Plaintiffs' counsel for failing to withdraw the action once it purportedly became clear it was frivolous—*i.e.* in light of the alleged "retraction" of the doctor's note, a written copy of which was provided by Defendants once the complaint was filed. (*Id.* at 15.)[5]

---

[4] Defendants also contest the validity of Plaintiffs' claims brought pursuant to 42 U.S.C. § 3604(c), which "protects against the psychic injury caused by discriminatory statements made in connection with the housing market." *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 52 (2d Cir. 2015) (alterations and citations omitted). (*See* Defs. Mem. at 8-9.) In response, Plaintiffs have withdrawn that claim. (Pls. Opp'n at 2, 18.)

[5] The Court will not consider the competing doctor's note, which Defendants did not have until after the complaint in this action was filed. (*Compare* Compl. (filed Oct. 2, 2015), *with* Defs. Aff. Ex. C (letter dated Oct. 9, 2015).) Indeed, Defendants do not indicate that they discussed with Plaintiffs their purported August 19, 2015 conversation with Dr. Biagiotti prior to initiating eviction proceedings. Thus, the letter is extrinsic and irrelevant to the allegations contained in the complaint, and the Court declines to convert Defendants' motion to dismiss into a motion for summary judgment on the issue of the competing doctor's notes. *See Chambers*, 282 F.3d at 154.

**I.       Fair Housing Act Claims**

The Fair Housing Act, as applicable here, makes it unlawful to "discriminate in the [] rental [of], or to otherwise make unavailable or deny, a dwelling to any . . . renter *because of*" such individual's disability.[6]  42 U.S.C. § 3604(f)(1) (emphasis added).  It also prohibits discrimination "against any person in the terms, conditions, or privileges of . . . rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, *because of*" the renter's disability.  42 U.S.C. § 3604(f)(2) (emphasis added).  For purposes of the FHA, discrimination also includes a refusal to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  Thus, a plaintiff alleging a violation under subsections (f)(1) or (f)(2) of the FHA can proceed by either of two theories, disparate treatment or disparate impact, and under subsection (f)(3) by claiming failure to make a reasonable accommodation.  *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002).

Despite focusing almost entirely on allegations that Defendants did not provide a reasonable accommodation for Plaintiff Tuman's disability (*see, e.g*, Compl. ¶¶ 2-4), Plaintiffs assert in opposition to Defendants' motion to dismiss that they are also claiming disparate treatment on the basis of disability—though they provide little clarity as to the precise nature of

---

[6]  The FHA uses the term "handicap," which may derive from gambling, trading, golfing, horse-racing, or—perhaps worst—begging. Oxford English Dictionary (Web ed., 22 February 2017) (describing various origins for "handicap, n." including horse racing and other forms of gambling or sport); Christy Hetherington, *Rhode Island Facing the Wrongful Birth/life Debate: Pro-Disabled Sentiment Given Life*, 6 Roger Williams U. L. Rev. 565, 582 (2001) ("'Handicapped' is rumored to have originated as a term used to describe a disabled pauper begging on the street corner with his cap in hand."). Whatever its origin, individuals with disabilities disfavor the term "handicap." Michael A. Rebell, *Structural Discrimination and the Rights of the Disabled*, 74 Geo. L.J. 1435, 1437 n.14 (1986) (discussing the etymology of the word "handicap" and opining that it has "greater connotations of inferior status"). Indeed, if for no other reason, the term is open to critique due to its association with the 19th and early-20th centuries' paternalistic attitudes towards such individuals.  Therefore, this Court like many others will use the term "disability," which is generally considered preferable.  *Rodriguez*, 788 F.3d at 38 n.8 (terms are interchangeable).

that claim.  (Pls. Mem. at 7-8; *see* Compl. ¶ 44-45.)  Plaintiffs also allege that Defendants retaliated against them when they sought to exercise their FHA rights.

At this stage, Plaintiffs allegations must be accepted as true and all reasonable inferences drawn from those allegations must be made in their favor.

### a. Disparate Treatment

Disparate treatment analysis focuses on whether a complainant was treated less favorably than others by a party subject to the FHA's protections.  *Reg'l Econ. Cmty. Action Program*, 294 F.3d at 48-50.  Proof of discriminatory animus is crucial for a disparate treatment claim, which at summary judgment is analyzed under the *McDonnell Douglas* framework.  *Id.*; *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 40 n.11 (2d Cir. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  To state a claim under either Section 3604(f)(1) or (f)(2) on the basis of disparate treatment, Plaintiffs "can establish a *prima facie* case by showing that animus against the protected group"—here, individuals with disabilities—"was a significant factor in the position taken" by Defendants.  *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995) (citations omitted).  But at the motion to dismiss stage, all that is required are sufficiently pleaded allegations that Plaintiffs are part of a protected class and that Defendants took actions against them that are forbidden by the FHA on the basis of their membership in the protected class.  *Boykin v. KeyCorp*, 521 F.3d 202, 214-16 (2d Cir. 2008) (Sotomayor, J.) ("The merits of a claim . . . , which on its face presents a plausible allegation of disparate treatment, should be tested on summary judgment.").

### i. Disability under the FHA

"To demonstrate a disability under the FHA, a plaintiff must show: (1) 'a physical or mental impairment which substantially limits one or more . . . major life activities'; (2) 'a record

of having such an impairment'; or (3) that he or she is 'regarded as having such an impairment.'" *Rodriguez*, 788 F.3d at 40 (quoting 42 U.S.C. § 3602(h)).  Plaintiff Tuman has alleged she suffers from PTSD that "causes her to have severe anxiety and difficulties with socialization," so much so that she "frequently seeks seclusion and solitude." (Compl. ¶ 22.)  Relatedly, the Second Circuit has determined that "a plaintiff is 'substantially limited' in 'interacting with others' when the mental or physical impairment severely limits the fundamental ability to communicate with others." *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 203–04 (2d Cir. 2004) (discussing major life activities in the ADA context).[7]  In describing the bounds of this standard, the Circuit explained:

> This standard is satisfied when the impairment severely limits the plaintiff's ability to connect with others, i.e., to initiate contact with other people and respond to them, *or to go among other people*—at the most basic level of these activities.  The standard is not satisfied by a plaintiff whose basic ability to communicate with others is not substantially limited but whose communication is inappropriate, ineffective, or unsuccessful.  A plaintiff who otherwise can perform the functions of a job with (or without) reasonable accommodation could satisfy this standard *by demonstrating isolation* resulting from any of a number of severe conditions, including acute or profound cases of: autism, agoraphobia, depression or other conditions that we need not try to anticipate today.

*Id.* (emphasis added).

Plaintiff Tuman's alleged difficulties with socialization resulting in self-seclusion and solitude is comparable to the major life activity of "interacting with others," and at this stage of the litigation the Court finds it plausible that she is isolated from others such that she may be substantially limited in a major life activity. *See cf. U.S. v. East River Housing Corp.*, 90 F. Supp. 3d 118, 124-29 (S.D.N.Y. 2015) (describing two plaintiffs suffering from PTSD, which

---

[7] Prior to 2008, the FHA and the ADA shared nearly identical definitions for "disability."  As the FHA definition of disability was not correspondingly amended when the amendments were made to the ADA in 2008, pre-amendment ADA cases continue to guide the interpretation of FHA cases. *Rodriguez*, 788 F.3d at 40 n.10.

8

impacted their "ability to socialize, maintain relationships, sleep, and concentrate," and led to "depression, anxiety, panic attacks, and insomnia").

Therefore, she has pleaded her disability and membership in a protected group.

### ii. Prohibited actions under the FHA

Aside from their reasonable accommodation claims discussed below, Plaintiffs have alleged that dogs reside with other residents at the apartment complex, that Plaintiffs were denied the opportunity to keep a dog, and that Defendants sought to have them evicted after they adopted their emotional support dog and informed them of Plaintiff Tuman's disability.  Under the FHA, a landlord is prohibited from discriminating "against any person in the terms, conditions, or privileges of . . . rental" or "otherwise mak[ing] unavailable or deny[ing] a dwelling to any . . . renter because of" an individual's disability.  42 U.S.C. § 3604(f)(2) & (f)(1).  Plaintiffs are entitled to the reasonable inference that since other individuals are allowed to keep pets, they were discriminated against on the basis of Tuman's disability—both in the privilege of keeping a dog and in their continued lease.

\* \* \*

Despite surviving Defendants' motion to dismiss, the Court takes no position on the likelihood of Plaintiffs' having sufficient evidence to establish a *prima facie* case of intentional discrimination, or disparate treatment "because of" Plaintiff Tuman's disability, at the summary judgment stage where evidence of substantial limitations on her major life activities and of discriminatory intent will be required.  *Compare Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 157 (2d Cir. 2014) (evidence adduced precluded summary judgment on the question of whether plaintiffs' son had a disability), *with Mazzocchi v. Windsor Owners Corp.*, --- F. Supp. 3d ----, No. 11 CIV. 7913 (AT), 2016 WL 4542035, at \*15 (S.D.N.Y. Aug. 31, 2016) (evidence did not

9

"establish a genuine dispute as to whether the alleged impairment 'substantially limit[ed]' any of [Plaintiff's girlfriend's] major life activities").

### b. Failure to Make a Reasonable Accommodation

In contrast to Plaintiffs' claims of intentional discrimination, when proceeding on a claim for failure to provide a reasonable accommodation, discriminatory motive is not required. Instead, a plaintiff with an alleged disability must establish that: (1) she is disabled within the meaning of the FHA, (2) the defendant knew or should have known of this fact, (3) an accommodation *may* be necessary to afford her an equal opportunity to use and enjoy the dwelling; (4) such accommodation is reasonable; and (5) the defendant refused to make the requested accommodation. *See Austin v. Town of Farmington*, 826 F.3d 622, 627 (2d Cir. 2016). The Court has already determined that the complaint sufficiently alleges Plaintiff Tuman suffers from a disability. Furthermore, Plaintiffs allege that Defendants were made aware of her disability and that they refused to provide the requested accommodation. (*See* Compl. ¶¶ 26-30.) The remaining questions are whether the accommodation may be necessary to afford Plaintiffs the equal opportunity to use and enjoy their apartment and whether it is reasonable.

### i. Necessity

"[A] 'necessary' accommodation is one that alleviates the effects of a disability." *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277, 1288 (11th Cir. 2014). Plaintiffs' pleadings incorporated the July 28, 2015 letter from Dr. Biagiotti stating that Plaintiff Tuman "suffers from severe anxiety due to" her PTSD and that "[h]er anxiety will be greatly alleviated if she is able to have a companion dog." (*Id.* ¶ 27; *see* Defs. Aff. Ex. B.) At this stage, all that is required are allegations that the emotional support dog *may* be necessary—*i.e.* alleviate the effects of her disability—in order to afford her the same enjoyment of her apartment as a

10

non-disabled individual. *See Ass'n of Apartment Owners of Liliuokalani Gardens at Waikiki v. Taylor*, 892 F. Supp. 2d 1268, 1287 (D. Haw. 2012) (citing *Hubbard v. Samson Mgmt. Corp.*, 994 F. Supp. 187, 191 (S.D.N.Y. 1998)).[8]

Thus, Plaintiffs' pleadings are sufficient to demonstrate a plausible necessity for her emotional support dog. *Cf. East River Housing Corp.*, 90 F. Supp. 3d at 124-29 (noting that HUD had found reasonable cause to believe two plaintiffs, both with PTSD seeking to alleviate the effects of the mental disorder, were discriminated against when reasonable accommodations were not made for their emotional support animals (one was a stray dog, the other a trained support dog)); *see also Fair Hous. of the Dakotas, Inc. v. Goldmark Prop. Mgmt., Inc.*, 778 F. Supp. 2d 1028, 1035-36 (D.N.D. 2011) (discussing the "difference between not requiring the owner of a movie theater to allow a customer to bring her emotional support dog, which is not a service animal, into the theater to watch a two-hour movie, an ADA-type issue," and "permitting the provider of housing to refuse to allow a renter to keep such an animal in her apartment in order to provide emotional support to her and to assist her to cope with her depression, an FHA-type issue," and concluding "the FHA encompasses all types of assistance animals regardless of training, including those that . . . ameliorate a mental disability"); *Janush v. Charities Housing Development Corp.*, 169 F. Supp. 2d 1133, 1134, 1136 (N.D. Cal. 2000) (denying motion to dismiss on the question of whether "plaintiff's pets, two birds and two cats, lessen[ed] the effects

---

[8] The Court notes that "[i]f a landlord is skeptical of a tenant's alleged disability [then] it is incumbent upon the landlord to request documentation or open a dialogue." *Hubbard*, 994 F. Supp. at 192 (quoting *Jankowski Lee & Assoc. v. Cisneros*, 91 F.3d 891, 896 (7th Cir. 1996)); *see also Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F. Supp. 3d 1120, 1127 (C.D. Cal. 2015) (citing *Jankowski*, 91 F.3d at 895) ("defendant was required to engage in the 'interactive process' with plaintiff to discuss and explore plaintiff's requested accommodations"). Plaintiffs allege the interactive process was initiated but there is insufficient material in the pleadings to determine whether the Defendants saw the process through to completion prior to serving the eviction notices on Plaintiffs.

of [her] [mental health] disability by providing her with companionship and [were] necessary to her mental health" despite not being trained "service animals").

### ii. Reasonableness

The "crux of a reasonable-accommodation claim typically will be the question of reasonableness," and the "[r]easonableness analysis is 'highly fact-specific, requiring a case-by-case determination.'" *Austin*, 826 F.3d at 629-30. Here, where Plaintiffs allege that other tenants keep animals at the apartment complex, the Court cannot "decide[] as a matter of law on the pleadings" that Plaintiffs' proposed accommodation is unreasonable. *See id.* at 629; *see also Perez v. Cambeyro*, No. 15 Civ. 21958 (CMA), 2015 WL 9942641, at *4 (S.D. Fla. Sept. 1, 2015) (the "reasonableness determination under the FHA 'requires a factual inquiry not appropriate at the motion to dismiss stage.'") (citation omitted).

\*   \*   \*

As previously mentioned, at summary judgment or trial Plaintiffs must produce evidence demonstrating her PTSD-based disability, that the support dog alleviates the symptoms of that disability such that it is necessary for her equal enjoyment of the premises, and that keeping the dog at Plaintiffs' apartment would be reasonable under the circumstances. *See, e.g.*, *Bhogaita*, 765 F.3d at 1288 (plaintiff "produced evidence from which a reasonable fact finder could conclude that his dog alleviated the effects of his PTSD"); *Taylor*, 892 F. Supp. 2d at 1288 ("whether Nell, as an untrained emotional support animal, [was] a 'reasonable accommodation' under the FHA" would depend "largely on the determination of [the plaintiff's] disability and the accommodation necessary to ameliorate the effects of the disability").

12

### c. Retaliation

A retaliation claim under Section 3617, like Plaintiffs' claims for disparate treatment, also requires "a showing of a particular state of mind, *i.e.*, a retaliatory motive." *Austin*, 826 F.3d at 630 (citing *Zhu v. Countrywide Realty Co.*, 165 F. Supp. 2d 1181, 1198 (D. Kan. 2001) ("[I]n order to make out a *prima facie* case under Section 3617, [a] plaintiff must demonstrate that intentional discrimination motivated defendants' conduct, at least in part.")); 42 U.S.C. § 3617 ("unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" sections 3603—3606). "The elements of a *prima facie* retaliation claim under the FHA are (1) the plaintiff engaged in protected activity, (2) the defendant was aware of this activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action." *Wilson v. Wilder Balter Partners, Inc.*, No. 13 Civ. 2595 (KMK), 2015 WL 685194, at *8 (S.D.N.Y. Feb. 17, 2015).

Plaintiffs correctly point out that Defendants do not specifically address Plaintiffs' claim of FHA retaliation brought pursuant to 42 U.S.C. § 3617. (Pls. Opp'n at 7-8.) Moreover, on the basis of the allegations in the complaint, a reasonable inference is that Defendants chose to retaliate against Plaintiffs by sending them eviction notices after they requested a reasonable accommodation—a "right granted or protected" by Section 3604(f)(3).

Therefore, this claim may proceed.

## II.   State Law Claims

Plaintiffs do not address Defendants' arguments in favor of dismissing Plaintiffs' pendent state law claims, which largely mirror their arguments against the FHA claims. (Defs. Mem.

13

at 9-12.) Although the Court has disagreed with Defendants' arguments in that regard, Plaintiffs are clearly aware of the implications of failing to address particular grounds for dismissal. (*See* Pls. Opp'n at 7-8 (discussing the fact that Defendants did not specifically seek to dismiss Plaintiffs' Section 3617 claims).) Plaintiffs' choice to oppose Defendants' motion to dismiss only with respect to the FHA claims is, therefore, deemed purposeful—and the state law claims considered abandoned. *See, e.g.*, *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 618 (S.D.N.Y. 2015) ("abandonment constitutes an[] independent ground for dismissal").

Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

### III.   Sanctions

Defendants complain vehemently of Plaintiffs delay in providing the second doctor's note (dated January 11, 2016, but provided in February *after* Defendants filed their motion to dismiss), characterizing that act as one of many dilatory tactics designed to prolong this—in their view—frivolous litigation. (Defs. Reply Mem. at 1-3, 9-10; *see also* Defs. Mem. at 13.) But as previously noted, *see supra* note 6, there is little indication that Defendants are not equally culpable of engaging in gamesmanship. Simply put, Defendants waited until Plaintiffs filed their suit to attack the credibility of Plaintiffs' doctor's note. Then, though it would have been better for all involved if Plaintiffs had proceeded more quickly, Plaintiffs waited until after Defendants filed their motion to dismiss before providing another letter regarding Plaintiff Tuman's need for her emotional support dog. And even after providing this note, albeit with delay, Defendants have not withdrawn their motion to dismiss as promised at the pre-motion conference and as suggested by their initial papers. (*See* Defs. Mem. at 8 ("no letter = no dog").)

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct." 28 U.S.C. § 1927. Rule 11 of the Federal Rules of Civil Procedure similarly requires counsel to conduct a reasonable inquiry to ensure "the claims, defenses, and other legal contentions" made in the litigation "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b)(2) & (b)(3). Neither Defendants' delay in questioning the sufficiency of Plaintiffs' original doctor's letter nor Plaintiffs' delay in providing the new letter constitute commendable behavior on the part of litigants appearing before this Court.[9] As both parties, however, have contributed to protracting the litigation thus far, the Court denies Defendants' motion for sanctions.

## IV. Leave to Amend

In light of the claims dismissed and withdrawn, as well as the suggestion of competing physician's letters, the Court grants Plaintiffs the opportunity to amend their complaint to conform to the facts currently available and to the principles set forth in this opinion—keeping in mind the strictures of Rule 11.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the complaint is DENIED in part and GRANTED in part: Plaintiffs' state law claims are dismissed. Since Plaintiffs withdrew their claim pursuant to 42 U.S.C. § 3604(c), that portion of Defendants' motion is denied as moot. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 25.

---

[9] The Court reiterates that neither of the supplemental doctors' letters submitted along with the pending motions were considered in deciding the motion to dismiss. Plaintiffs' cross-motion to strike the letters was unnecessary given that the letters could not be considered at this stage of the proceedings.

Plaintiff shall file an amended complaint in conformance with the above on or before March 20, 2017. Defendants shall answer or seek a pre-motion conference on any potential non-frivolous and non-repetitive motion to dismiss by April 21, 2017. The parties are directed to appear for an initial pre-trial conference on April 27, 2017 at 10:00 am.

Dated: February 27th, 2017
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge